# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DARLA TINKER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Jury Demand Endorsed Herein |
| TRANS UNION, LLC, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Darla Tinker, by and through undersigned counsel, and for her Complaint against the Defendant, Trans Union, LLC, she states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendant for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Darla Tinker ("Plaintiff") is a natural person that resides in St. Louis, Missouri.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4. Trans Union, LLC ("Trans Union") is a foreign limited liability company that regularly transacts business in Missouri.

5. Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

7. Venue in this District is proper because Plaintiff resides in this District, Defendant transacts business in this District, and the conduct complained of occurred in this District.

**BACKGROUND AND FACTUAL ALLEGATIONS**

8. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

9. In March 2020, Plaintiff consulted with a mortgage lender about applying for a loan to purchase a home.

10. After submitting an application, she was informed her credit scores were too low for her to be eligible for financing.

11. Plaintiff was surprised to hear she was not eligible. She obtained a copy of her credit report from Trans Union to investigate her reports for inaccuracies.

12. Upon further review, she discovered Trans Union was incorrectly reporting an account related to her student loan through the Higher Education Loan Authority of the State of Missouri ("MOHELA").

13. The MOHELA account was incorrectly reporting with a derogatory account status, despite its actual status as a paid as agreed account.

14. This inaccurate account status was unfairly anchoring down Plaintiff's credit scores.

15. After reviewing her credit reports with Experian and Equifax, Plaintiff determined this was only an issue with her Trans Union credit report.

16. On or about April 27, 2020, Plaintiff contacted Trans Union by letter to dispute the inaccurate duplication of the MOHELA accounts and the derogatory account statuses.

17. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, Trans Union was then required to reasonably investigate Plaintiff's dispute and make all necessary corrections.

18. However, Trans Union failed to respond to plaintiff's dispute.

19. Plaintiff was discouraged and dismayed. She was already embarrassed at having her loan application denied. Why was Trans Union compounding the problem by failing to investigate her dispute? Why wouldn't Trans Union ensure her credit report was complete and accurate as required?

20. Determined to get this problem fixed, Plaintiff sent an additional letter to Trans Union disputing the inaccurate status of the account on June 9, 2020.

21. However, Trans Union again failed to respond.

22. Eventually, Plaintiff sent a final dispute letter to Trans Union on September 15, 2020.

23. Trans Union, again, failed to respond.

24. After again consulting with her mortgage lender, Plaintiff's fears were confirmed -Trans Union's reporting of these accounts continued to place Plaintiff's scores below the threshold required for her home loan approval.

25. Plaintiff is at a loss as to how to follow – let alone combat – Trans Union's logic in allowing the MOHELA account to report as derogatory despite its good standing.

26. Plaintiff has lost all trust in the credit reporting system and believes that litigation is her only option to fix this reporting issue.

## **CLAIM FOR RELIEF**

**Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union**

27. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

28. A "consumer reporting agency" is defined by the FCRA as follows:

29. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

30. Trans Union is a "consumer reporting agency" as defined by the FCRA.

31. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

32. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

33. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

34. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

35. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

**Trans Union's Reasonable Reinvestigation Violations**

36. By letters dated April 17, 2020, June 9, 2020, and finally September 15, 2020, Plaintiff disputed the inaccurate accounts on her Trans Union credit report.

37. Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade lines be updated accordingly.

38. Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

39. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

40. As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

41. As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

42. Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files,

ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

43. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Failure To Follow Reasonable Procedures
## To Assure Maximum Possible Accuracy

44. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

45. On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

46. Despite actual and implied knowledge that the MOHELA account contained inaccurate information, Trans Union readily sold inaccurate reports to one or more third parties without regard to the accuracy or inaccuracy of what Trans Union reported.

47. On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

48. Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information

it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

49. Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

50. As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

51. Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

52. Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Trans Union, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

**By: s/Andrew M. Esselman**
Andrew M. Esselman #64837
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
T: (816) 246-7800
F: (855) 523-6884
andrewe@creditlawcenter.com
Attorney for Plaintiff

8